In the

# United States Court of Appeals

## For the Seventh Circuit

No. 02-3374

JANICE ARRES,

*Plaintiff-Appellant*,

*v.*

IMI CORNELIUS REMCOR, INC.,

*Defendant-Appellee*.

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 00 C 6542—**Blanche M. Manning**, *Judge*.

ARGUED FEBRUARY 11, 2003—DECIDED JUNE 25, 2003

Before EASTERBROOK, ROVNER, and WILLIAMS, *Circuit Judges*.

EASTERBROOK, *Circuit Judge*.   IMI Cornelius Remcor, Inc., a manufacturer of soft drink dispensing machines, hired Janice Arres as a human resources administrator in 1996 and fired her three years later. Arres brought suit under Title VII of the Civil Rights Act of 1964, alleging that Remcor acted because of her race and national origin. She also contended that Remcor violated Illinois law by retaliating against her for attempting to follow immigration law. The district court granted summary judgment to Remcor. 2002 U.S. Dist. LEXIS 15177 (N.D. Ill. August 15, 2002). On appeal Arres has abandoned her claims under federal law and contends only that Illinois

law blocks an employer from firing someone who tries to remove from the payroll aliens not entitled to work in the United States.

In March 1999 the Social Security Administration informed Remcor that 10% of the W-2 forms filed by its employees showed names or numbers that did not agree with federal records. After cross-checking, Arres found that the fault lay with the workers rather than with Remcor. She believed that persons who would furnish bogus Social Security numbers must be aliens who lack visas that authorize work within the United States. Arres recommended to both her immediate supervisor, Dan Weinick, and Weinick's supervisor, Mike Long, that Remcor immediately fire these employees. According to Arres, Remcor's longstanding practice had been to discharge persons who furnished fraudulent information. At Long's direction, Weinick informed Arres that he would handle the situation. After consulting with the Social Security Administration and one of Remcor's attorneys, Weinick decided to send letters to the employees asking them to correct any errors. Arres believed that approach to be unlawful, and she refused to process the information employees submitted in response. Arres submits that Remcor fired her because of this refusal, a step that she says constitutes retaliatory discharge in violation of Illinois law.

This theory required Arres to show: (1) that she had been discharged; (2) that her discharge was in retaliation for her activities; and (3) that her discharge violated a clearly mandated public policy of the state of Illinois. *Hinthorn v. Roland's of Bloomington, Inc.*, 119 Ill. 2d 526, 529, 519 N.E.2d 909, 911 (1988). In seeking summary judgment, Remcor argued that the existence of a federal anti-retaliation rule, 8 U.S.C. §1324b(a)(5), forecloses any state remedy, and alternatively that the real cause of Arres' discharge was poor performance. The district

court, relying on the first argument, awarded summary judgment to Remcor, concluding that:

> [b]ecause §1324b(a)(5) . . . unequivocally sets forth a remedy for individuals who have filed a charge or complaint with the INS and then were consequently retaliated against, a claim for retaliatory discharge in Illinois is not actionable.

2002 U.S. Dist. LEXIS 15177 at *16-17 (citation omitted).

That reasoning is inconsistent with *Brandon v. Anesthesia & Pain Management Associates, Ltd.*, 277 F.3d 936 (7th Cir. 2002), which holds that the availability of a federal remedy does not automatically preclude a state retaliatory-discharge claim. What's more, §1324b(a)(5) does not provide a remedy for Arres in the first place. Section 1324b(a)(5) states (emphasis added):

> It is also an unfair immigration-related employment practice for a person or other entity to . . . retaliate against any individual for the purpose of interfering with any right or privilege secured *under this section* or because the individual intends to file or has filed a charge or complaint . . . *under this section.*

This does not cover all activities that implicate any provision of the immigration laws; it is limited to complaints and charges regarding discrimination based on national origin and citizenship, the subject of §1324b. Arres does not contend that her refusal to process the employees' paperwork was designed to ensure the correct implementation of §1324b. Instead, she says, her acts were designed to prevent Remcor from violating 8 U.S.C. §1324 and §1324a, which concern employment of aliens. There is accordingly no overlap between §1324b and the state-law theory Arres presents.

Although Remcor is wrong to argue that Illinois never protects employees who try to follow federal law, Arres

is wrong to suppose that either state or federal law gives her any right to follow an idiosyncratic view of the law's demands. Remcor did exactly what the Social Security Administration and its legal counsel suggested: before firing anyone, it tried to separate those who had made inadvertent errors from those who are not entitled to work in the United States. Doing this enabled Remcor to respect the rights of aliens who have work authorization while also following its duties under §§ 1324 and 1324a. A human resources manager is not free to impose a different approach unilaterally; that's nothing but insubordination. Imagine the disruption in workplaces everywhere if every person were legally privileged to act (or not act) based on her own view of what the law (federal or state) requires, and managers were helpless to do anything in response. Neither state nor federal law creates such an untenable system. That Arres did not agree with counsel's view of Remcor's legal obligations is not a justification for insubordination. *Brandon* does not hold otherwise. Dr. Brandon reported suspicions to his colleagues. Rather than consult with federal authorities or counsel, they dismissed his concerns and fired him. The employer in *Brandon* spurned its legal duties; Remcor sought out and followed legal advice. It was entitled to insist that Arres, like its other employees, follow the advice received from counsel—which is not alleged to be erroneous, let alone so transparently wrong that even a lay person is bound to know better. (Even with the aid of discovery, Arres has not established that the employees in question were aliens, let alone that any aliens among them lacked green cards. For all this record shows, each had made a simple error in transcribing a Social Security number.)

Arres faces another problem. Her brief states that the Illinois public policy is found at 8 U.S.C. §1324a, which prohibits the employment of aliens who lack proper creden-

tials. We observed in *Brandon* that "it is a clearly established policy of Illinois to prevent its citizens from violating federal law and that the state's public policy encourages employees to report suspected violations of federal law if that law advances the general welfare of Illinois citizens." 277 F.3d at 942. This follows from the principle that federal law is the law of the states. The Supremacy Clause of the federal Constitution requires Illinois to treat federal law as part of state law. See *Claflin v. Houseman*, 93 U.S. 130, 136-37 (1876). Although the state's Supreme Court has acknowledged that "[t]here is no precise definition of [public policy]", it has explained that public policy "concerns what is right and just and what affects the citizens of the State collectively. . . . [The] matter must strike at the heart of a citizen's social rights, duties, and responsibilities before the tort will be allowed." *Palmateer v. International Harvester Co.*, 85 Ill. 2d 124, 130, 421 N.E.2d 876, 878-79 (1981). Discharging persons who endeavor to implement federal law thus usually violates Illinois law. See *Brandon*, 277 F.3d at 942-43; *Wheeler v. Caterpillar Tractor Co.*, 108 Ill. 2d 502, 511, 485 N.E.2d 372, 377 (1985).

Usually differs from always, however; some rules of federal law must be implemented only as the national government determines. Labor law is one such subject; states may not adopt rules that require, or prohibit, things arguably prohibited or arguably required by federal labor law. See *San Diego Building Trades Council v. Garmon*, 359 U.S. 236 (1959). Immigration law is another domain of this kind. "[T]he supremacy of the national power in the general field of foreign affairs, including power over immigration, naturalization and deportation, is made clear by the Constitution". *Hines v. Davidowitz*, 312 U.S. 52, 62 (1941). "[T]he states are granted no such powers; they can neither add to nor take from the conditions lawfully imposed by Congress upon admission, naturalization and

residence of aliens in the United States or the several states." *Takahashi v. Fish & Game Commission*, 334 U.S. 410, 419 (1948). See also *Toll v. Moreno*, 458 U.S. 1 (1982); *Plyler v. Doe*, 457 U.S. 202 (1982). Federal immigration power is not just superior to that of the states; it is exclusive of any state power over the subject. Illinois is not entitled to have a policy on the question what precautions should be taken to evaluate the credentials of aliens who may, or may not, hold visas authorizing them to work. Whether persons in Arres' position are entitled to implement private understandings of federal immigration policy, free from any risk to their status within the firm, is a question of federal law alone. Congress provided an anti-retaliation provision in §1324b and omitted one from §1324a. Illinois is not free to obliterate this difference through state law—and we have no reason to suppose that the Supreme Court of Illinois would try. That leaves Arres without a legal footing for her claim of retaliatory discharge and makes it unnecessary for us to explore the question whether Arres has established causation.

AFFIRMED

A true Copy:

  Teste:

          _____

          *Clerk of the United States Court of*
            *Appeals for the Seventh Circuit*