# United States Court of Appeals

**FOR THE EIGHTH CIRCUIT**

_____

No. 04-2643

_____

| | |
|---|---|
| Tracey Daley, and other similarly situated persons, | * |
| | * |
| | * |
| Appellant, | * |
| | * |
| v. | * |
| | * |
| Marriott International, Inc., | * |
| | * |
| Appellee. | |

_____

No. 04-2651

_____

Appeals from the United States
District Court for the
District of Nebraska.

| | |
|---|---|
| Tracey Daley, | * |
| | * |
| Appellant, | * |
| | * |
| v. | * |
| | * |
| Marriott Health Plan; Empire Blue Cross/Blue Shield, | * |
| | * |
| | * |
| Appellees. | * |

_____

Submitted: February 17, 2005
Filed: July 25, 2005
_____

Before MORRIS SHEPPARD ARNOLD, BOWMAN, and GRUENDER, Circuit
    Judges.

_____

GRUENDER, Circuit Judge.

Tracey Daley ("Daley") filed a complaint against the Marriott Health Plan (the "Plan")[1] and Empire Blue Cross/Blue Shield ("Empire") for breach of contract under state law and breach of fiduciary duty under the Employee Retirement Income Security Act, 29 U.S.C. §§ 1001-1461 ("ERISA"). Daley alleged that the Plan failed to provide mental-health coverage in accordance with Nebraska's mental-health parity law. The Plan and Empire filed a motion for summary judgment. The district court[2] granted the motion because it concluded that the Nebraska mental-health parity law is preempted by ERISA as to self-funded ERISA plans.

In a separate action, Daley filed a similar complaint against Marriott International, Inc. ("Marriott"), in its capacity as administrator of the Plan. Marriott moved to dismiss the complaint based on the doctrine of res judicata. The district court[3] granted the motion and alternatively held that the Nebraska mental-health parity law is preempted by ERISA as to Marriott's self-funded ERISA plan.

_____

[1]Although Daley captioned the Plan as the "Marriott Health Plan," the proper legal name of the Plan is the "Marriott International, Inc. Medical Plan."

[2]The Honorable William Jay Riley, United States Circuit Judge for the Eighth Circuit, sitting by designation.

[3]The Honorable Laurie Smith Camp, United States District Judge for the District of Nebraska.

Daley appeals both judgments.  For the reasons discussed below, we affirm both judgments.

## I.    BACKGROUND

Daley is an employee of Marriott Corporation, Inc., a subsidiary of Marriott. Daley is a participant in the Plan, which is self-funded and sponsored by Marriott and governed by ERISA.[4]  Marriott is the administrator of the Plan, and as such, under the Plan it has the "sole and absolute final discretion to determine eligibility for plan benefits, to construe the terms of the plan, and to resolve any factual issues relevant to benefit eligibility or benefit enrollment."  Pursuant to an agreement with Marriott, Empire performs third-party administrative and claims-processing services for the Plan.

Under the terms of the Plan, in-network outpatient mental-health visits are fully covered, subject to a co-payment.  Such coverage, however, is subject to a plan-year maximum of thirty visits and a lifetime maximum of 200 visits.

In 2000, Daley began receiving outpatient treatment for an unspecified mental-health condition.  In 2000 and 2001, she incurred claims exceeding the plan-year maximum of thirty visits.  Empire denied those claims and Daley's appeals of those claims on the basis that Daley's visits exceeded the plan-year maximum.  Daley argued that Nebraska's mental-health parity law, Neb. Rev. Stat. §§ 44-791 to 795 (2000), prohibited the Plan from imposing any limits on mental-health coverage.[5]

---

[4]The record does not reflect whether Daley is still an employee of Marriott and a participant in the Plan.

[5]Neb. Rev. Stat. § 44-793(1)(a)(i) provides that a health insurance plan "shall not establish any rate, term, or condition that places a greater financial burden on an insured for access to treatment for a serious mental illness than for access to treatment for a physical health condition . . . ."  Section 44-792(4) defines "[r]ate, term, or

The Plan, through Empire, took the position that the Nebraska mental-health parity law does not apply to the Plan because the law is preempted by ERISA.

Daley decided not to pursue an optional appeal of her denied claims to Marriott. Instead, on January 20, 2003, Daley filed a complaint against the Plan and Empire for breach of contract under state law and breach of fiduciary duty under ERISA § 409, 29 U.S.C. § 1109, based on the Plan's failure to provide mental-health coverage in accordance with the Nebraska mental-health parity law.

Daley made three attempts to amend her complaint to add Marriott as a defendant. First, on August 29, 2003, Daley filed a motion to add Marriott as a defendant. The magistrate judge[6] denied the motion, citing Daley's failure to comply with Rule 15.1 of the Local Rules of the United States District Court for the District of Nebraska, which requires the moving party to attach a proposed amended pleading to the motion.[7] Then, on December 26, 2003, Daley filed another motion to amend her complaint seeking to add Marriott as a defendant, to expand the timeframe of denied claims to 2003, and to add an allegation of untimely notices of those

condition" as "lifetime limits, annual payment limits, and inpatient or outpatient service limits. Rate, term, or condition does not include any deductibles, copayments, or coinsurance . . . ." In other words, the Nebraska law requires annual and lifetime limits on mental-health benefits to be on par or better than limits on physical-health benefits.

[6]The Honorable F.A. Gossett, United States Magistrate Judge for the District of Nebraska.

[7]Rule 15.1 provides: "A party who moves for leave to amend a pleading (including a request to add parties) shall attach to the motion an unsigned copy of the proposed amended pleading. Except as provided in these rules or by leave of court, the proposed amended pleading so submitted shall be a complete pleading which, if allowed to be filed, shall supersede the pleading amended in all respects; no portion of the prior pleading may be incorporated into the proposed amended pleading by reference."

additional claim denials. The magistrate judge denied this motion because the proposed amended complaint attached to the motion failed to reference Marriott, the party Daley intended to add as a defendant.[8] Finally, on January 23, 2004, Daley filed a motion to reconsider the denial of her motion to amend and attached a corrected proposed amended complaint which substituted Marriott as a defendant in place of the Plan, expanded the timeframe of denied claims, and added an allegation of untimely claim denials. The magistrate judge construed the motion as a renewed motion for leave to amend and denied it.[9]

---

[8]We note that in addition to failing to reference Marriott, the motion also was untimely. The magistrate judge's pre-trial scheduling order set August 29, 2003, as the deadline for Daley to file any motions to add parties or amend pleadings.

[9]On appeal, Daley argues that the magistrate judge erred in denying her motion for leave to amend her complaint. We cannot review Daley's challenge to the merits of the magistrate judge's order denying this nondispositive pretrial motion because Daley failed to file any objections to such order with the district court. Under Rule 72(a) of the Federal Rules of Civil Procedure, if a party fails to file with the district judge timely objections to an order of a magistrate judge on a nondispositive pretrial motion, such party "may not thereafter assign as error a defect in the magistrate judge's order." Fed. R. Civ. P. 72(a); *See Lee/Millsap v. Wright*, 121 Fed. Appx. 673, 674 (8th Cir. 2005) (unpublished per curiam) (citing Fed. R. Civ. P. 72(a), the Court held that it could not review appellant's challenge to the magistrate judge's rulings on nondispositive matters because appellant did not file objections to such rulings with the district court); *Reed v. Home Depot USA, Inc.*, 119 Fed. Appx. 16, 16 (8th Cir. 2004) (unpublished per curiam) (same). Therefore, where, as here, the parties did not consent to final disposition by a magistrate judge under 28 U.S.C. § 636(c), we do not have jurisdiction to hear a direct appeal of a magistrate judge's order on a nondispositive pretrial matter. *See United States v. Haley*, 541 F.2d 678, 678 (8th Cir. 1974) (noting that this Court has limited jurisdiction under 28 U.S.C. § 1291 to hear appeals from final decisions of a district court, and in light of the fact that there was no decision by a federal district court, the Court held that it was without jurisdiction to hear a direct appeal from a decision of a magistrate judge). We agree with the First Circuit's conclusion in *Pagano v. Frank*, 983 F.2d 343, 346 (1st Cir. 1993), that "when . . . a litigant could have tested a magistrate's ruling by bringing it before the district judge, but failed to do so within the allotted ten-day period [in

The Plan and Empire moved for summary judgment, arguing that ERISA preempts the Nebraska mental-health parity law. On June 1, 2004, the district court granted the motion, concluding that Daley's claims were based on a state law that, as applied to self-funded ERISA plans, is preempted by ERISA. *See Daley v. Marriott Health Plan*, No. 8:03CV26 (D. Neb. June 1, 2004) ("*Daley I*").

Meanwhile, on February 19, 2004, Daley filed a lawsuit against Marriott in its capacity as Plan administrator ("*Daley II*"). The complaint in *Daley II* is the same as the complaint filed in *Daley I*, except in the following respects: (1) Marriott, as opposed to the Plan and Empire, is the named defendant in *Daley II*; (2) the *Daley II* complaint contains an allegation of additional claim denials based on the plan-year limit since the filing of *Daley I*; and (3) the *Daley II* complaint contains an allegation of untimely notices of those additional claim denials. Marriott moved to dismiss *Daley II* based on the doctrine of res judicata. On June 18, 2004, the district court granted the motion on res judicata grounds and alternatively held, like the district court in *Daley I*, that Daley failed to state a claim because her claim relied on a state law that, as applied to self-funded ERISA plans, is preempted by ERISA.

Daley now appeals the district court's adverse grant of summary judgment in *Daley I*. She also appeals the district court's dismissal of *Daley II*.

## II. DISCUSSION

### A. *Daley I*

Daley argues that the district court erred in holding that the Nebraska mental-

---

Rule 72(a)], he cannot later leapfrog the trial court and appeal the ruling directly to the court of appeals."

health parity law is preempted by ERISA.[10]  "Because ERISA preemption is a question of federal law involving statutory interpretation, we review the district court's decision de novo." *Ark. Blue Cross & Blue Shield v. St. Mary's Hosp., Inc.*, 947 F.2d 1341, 1344 (8th Cir. 1991).

Before addressing Daley's argument that ERISA does not preempt the Nebraska mental-health parity law, we must explain the analytical framework of ERISA preemption.  "ERISA comprehensively regulates employee pension and welfare plans." *Baxter v. Lynn*, 886 F.2d 182, 184 (8th Cir. 1989).  "To meet the goals of a comprehensive and pervasive Federal interest and the interests of uniformity with respect to interstate plans, Congress included an express preemption clause in ERISA for the displacement of State action in the field of private employee benefit programs." *Wilson v. Zoellner*, 114 F.3d 713, 715-16 (8th Cir. 1997) (internal quotations omitted).  Accordingly, ERISA broadly preempts "any and all State laws insofar as they may now or hereafter relate to any employee benefit plan" governed by ERISA.  29 U.S.C. § 1144(a).

However, ERISA contains an exception to the general rule of preemption, which is referred to as the "savings clause."  Under the savings clause, a state law that

_____

[10]In her opening brief to this Court, Daley states that the "primary issue" in this case is whether the Nebraska mental health parity law is preempted by ERISA. However, in her reply brief, Daley asserts for the first time that ERISA preemption of the Nebraska law is not the issue in this case.  She now claims that she is attempting to enforce against the Plan the federal mental-health parity law set forth in 29 U.S.C. § 1185a.

We view this as "an attempt to amend one's pleadings in an appellate brief." *Dorothy J. v. Little Rock School Dist.*, 7 F.3d 729, 734 (8th Cir. 1993) (quoting *Hanson v. Town of Flower Mound*, 679 F.2d 497, 504 (5th Cir. 1982)) (internal quotation omitted).  In her complaint, Daley merely alleged the Plan's failure to conform to the Nebraska mental-health parity law.  Accordingly, we will not consider this new claim which Daley did not raise in the district court. *See Alexander v. Pathfinder, Inc.*, 189 F.3d 735, 740 (8th Cir. 1999).

regulates insurance is "saved" from ERISA preemption. 29 U.S.C. § 1144(b)(2)(A).[11] ERISA's "deemer clause," in turn, "exempt[s] self-funded ERISA plans from state laws that 'regulat[e] insurance' within the meaning of the savings clause." *FMC Corp. v. Holliday*, 498 U.S. 52, 61 (1990). The effect of the deemer clause is that "self-funded ERISA plans are exempt from state regulation insofar as that regulation 'relate[s] to' the plans." *Id.*[12]

Daley cites three cases in support of her argument against ERISA preemption of the Nebraska mental-health parity law: *Express Scripts, Inc. v. Wenzel*, 262 F.3d 829 (8th Cir. 2001) (holding that Missouri statutes regulating some aspects of how Missouri HMOs provide prescription drugs through network pharmacies regulate insurance and, therefore, fall within ERISA's savings clause); *Rush Prudential HMO, Inc. v. Moran*, 536 U.S. 355 (2002) (holding that Illinois statute requiring HMOs to

---

[11]The savings clause provides: "Except as provided in subparagraph (B), nothing in this subchapter shall be construed to exempt or relieve any person from any law of any State which regulates insurance, banking, or securities." 29 U.S.C. § 1144(b)(2)(A). In *Kentucky Ass'n of Health Plans, Inc. v. Miller*, 538 U.S. 329, 341-42 (2003), the Supreme Court refined the analysis for determining whether a state law regulates insurance for purposes of ERISA's savings clause. A state law must satisfy two requirements to be deemed a law which regulates insurance: (1) it "must be specifically directed toward entities engaged in insurance"; and (2) it "must substantially affect the risk pooling arrangement between the insurer and the insured." *Id.*

[12]The deemer clause provides: "Neither an employee benefit plan . . . nor any trust established under such a plan, shall be deemed to be an insurance company or other insurer, bank, trust company, or investment company or to be engaged in the business of insurance or banking for purposes of any law of any State purporting to regulate insurance companies, insurance contracts, banks, trust companies, or investment companies." 29 U.S.C. § 1144(b)(2)(B). As we noted above, although the Supreme Court refined the savings-clause analysis in *Miller*, 538 U.S. at 341-42, "[n]othing in *Miller* indicates a change in the Court's deemer-clause analysis." *Prudential Ins. Co. of Am. v. Nat'l Park Med. Ctr., Inc.*, Nos. 04-1465/1644, slip op. at 24 (8th Cir. June 29, 2005).

provide independent medical review of certain claim denials is saved from preemption because the statute regulates insurance within the meaning of ERISA's savings clause); and *Miller*, 538 U.S. 329 (holding that two Kentucky any-willing-provider laws are saved from preemption because they regulate insurance within the meaning of ERISA's savings clause). Relying on these cases, Daley argues that the Nebraska mental-health parity law is "saved" from ERISA preemption. Ultimately, Daley's argument is fatally flawed because it ignores the significance of the deemer clause in cases where self-funded ERISA plans are concerned. *See Prudential Ins. Co.*, Nos. 04-1465/1644, slip op. at 23 ("The movants' argument here fails because it ignores the application of the deemer clause to self-funded ERISA plans, a non-issue in *Miller*, but the controlling issue in this case with regard to the [plaintiff's self-funded ERISA] plan.").

Whether the Nebraska mental-health parity law is saved from preemption is not the determinative issue. Because the law "relates to" an ERISA employee benefit plan, ERISA's deemer clause exempts Marriott's self-funded Plan from application of Nebraska's mental-health parity law. *See FMC Corp.*, 498 U.S. at 61. In addition, because of the deemer clause, the Nebraska mental-health parity law cannot regulate the Plan indirectly through Empire. *See Prudential Ins. Co.*, Nos. 04-1465/1644, slip op. at 23 ("The Supreme Court has noted repeatedly that because of the deemer clause, statutes that indirectly regulate self-funded ERISA plans are not saved from preemption to the extent such statutes apply to self-funded plans.").[13] Accordingly, we affirm the decision of the district court in *Daley I*.

**B.    *Daley II***

We now turn to the issue of whether the doctrine of res judicata bars *Daley II*. We review de novo a dismissal based on res judicata grounds. *Lundquist v. Rice*

_____

[13]The additional argument advanced by Daley that summary judgment should not have been granted because an issue of fact exists as to whether Empire is a fiduciary under ERISA is, therefore, irrelevant.

*Mem'l Hosp.*, 238 F.3d 975, 976 (8th Cir. 2001) (per curiam). "Under the doctrine of res judicata, a judgment on the merits in a prior suit bars a second suit involving the same parties or their privies based on the same cause of action." *Landscape Properties, Inc. v. Whisenhunt*, 127 F.3d 678, 682 (8th Cir. 1997) (quoting *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326 n.5 (1979)) (internal quotation omitted). Daley argues that res judicata dismissal of *Daley II* was improper because the claims asserted in *Daley II* are much broader than those in *Daley I*, and Marriott was not a defendant in *Daley I*. We reject both arguments and affirm the district court's dismissal of *Daley II*.

### 1.    Same Cause of Action

For purposes of res judicata, the term "cause of action" has been given a "more practical construction" than the "rather rigid and technical construction" it was given at common law. *Ruple v. City of Vermillion*, 714 F.2d 860, 861 (8th Cir. 1983).[14]  Therefore, under the "same cause of action" element of the doctrine of res judicata, "whether a second lawsuit is precluded turns on whether its claims arise out of the 'same nucleus of operative facts as the prior claim.'"  *Costner v. URS*

---

[14]In *Ruple*, the Court explained that at common law,

> if someone brought debt to recover possession of a specific thing, and the action was dismissed, a second action, this time in the form of detinue, would not be barred.  The second case, it was said, was on a different  "cause of action." . . . It is now said, in general, that if a case arises out of the same nucleus of operative fact, or is based upon the same factual predicate, as a former action, that the two cases are really the same "claim" or "cause of action" for purposes of res judicata.  Since the forms of action have been abolished, and joinder of claims and amendment of pleadings are liberally permitted in both federal and state courts, there is no reason to give a claimant more than one fair chance to present the substance of his or her case.

*Ruple*, 714 F.2d at 861.

*Consultants, Inc.*, 153 F.3d 667, 673 (8th Cir. 1998) (quoting *United States v. Gurley*, 43 F.3d 1188, 1195 (8th Cir. 1994)). "Thus we have said that '[i]n the final analysis the test would seem to be whether the wrong for which redress is sought is the same in both actions.'" *Roach v. Teamsters Local Union No. 688*, 595 F.2d 446, 449 (8th Cir. 1979) (quoting *Woodbury v. Porter*, 158 F.2d 194, 195 (8th Cir. 1946)).

Daley argues that her additional allegations in *Daley II*–subsequent mental-health benefit denials under the Plan since the filing of *Daley I* and untimely notices of those denials–are new causes of action which should not be barred by res judicata. We reject this argument because it improperly relies on a rigid and technical view of the term "cause of action." Taking a more practical view, the two additional allegations in *Daley II* are part of the "same nucleus of operative facts" as *Daley I*: the Nebraska mental-health parity law, the plan-year limit on outpatient mental-health visits under the Plan, and the Plan's denial of Daley's claims for mental-health benefits in excess of the plan-year limit. Regardless of the number of claim denials and whether Daley received timely notice of those denials, the wrong for which she seeks redress–the denial of her claims based on the plan-year limit–is the same in both *Daley I* and *Daley II*. Therefore, we conclude that *Daley II* is based on the same cause of action as *Daley I*.

## 2.    Privity

Although we conclude that *Daley I* and *Daley II* are based on the same cause of action, the doctrine of res judicata will not bar *Daley II* against a defendant which was not a party to *Daley I*. Marriott, the only named defendant in *Daley II*, was not a party to the *Daley I* lawsuit in which the Plan and Empire were the named defendants. An exception exists, however, when a defendant stands in privity with a defendant in the prior suit. *Headley v. Bacon*, 828 F.2d 1272, 1275 (8th Cir. 1987).

Daley argues that the doctrine of res judicata does not bar *Daley II* against Marriott because Marriott, a non-party to *Daley I*, does not stand in privity

with Empire.  Daley does not address the issue of whether Marriott, the Plan administrator, is in privity with the Plan.  She misses the point that in order for her argument to succeed, Marriott must not be in privity with *either* defendant in *Daley I*.  Daley's argument fails, therefore, because we conclude that Marriott stands in privity with the Plan.

Marriott and the Plan are in privity because they have "a close relationship, bordering on near identity."  *Gurley*, 43 F.3d at 1197 (quoting *Headley*, 828 F.2d at 1276) (internal quotations omitted).  We focus  not on the nature of their relationship in general, but on the identity of their interests in *Daley I*.  *Headley*, 828 F.2d at 1277; *see Ruple*, 714 F.2d at 862.

In *Daley I*, Marriott's interests as the administrator of the Plan were identical to the Plan's interests.  The Plan provides that the Plan administrator "is responsible for all discretionary matters arising in the interpretation, operation, and administration of the Plan."  In addition, the Plan's summary plan description designates Marriott's General Counsel as the agent for service of legal process and states that only the Plan administrator or its officially designated representatives are authorized to speak for the Plan.  Therefore, in *Daley I*, Marriott, in its capacity as the Plan administrator, was the entity concerned with ensuring that Plan benefits be provided in accordance with the terms of the Plan.  In fact, had Daley somehow prevailed in *Daley I*, Marriott, the Plan administrator, would have been obligated to disburse benefits under the Plan accordingly.  Therefore, we conclude that the Plan and Marriott are in privity for purposes of res judicata.

Accordingly, because *Daley II* involves the same parties or their privies and is based on the same cause of action as *Daley I*, we affirm the district court's dismissal of *Daley II* on res judicata grounds.

## III.  CONCLUSION

For the reasons discussed above, we affirm the district courts' judgments in *Daley I* and *Daley II.*

_____