**Cindy TIENGKHAM and Marisela Gonzalez, Plaintiffs,**

v.

**ELECTRONIC DATA SYSTEMS CORPORATION, Defendant.**

Nos. 4:07–CV–0265–JAJ, 4:07–CV–0563–JAJ.

United States District Court, S.D. Iowa, Central Division.

May 6, 2008.

---

Thomas Andrew Newkirk, Fiedler & Newkirk PLC, Urbandale, IA, for Plaintiffs.

Hugh J. Cain, Hopkins & Huebner, Des Moines, IA, for Defendant.

### ORDER

JOHN A. JARVEY, District Judge.

This matter comes before the Court pursuant to Defendant Electronic Data Systems Corporation's ("EDS") December 3, 2007, motion for writ of prohibition, [Clerk's No. 10, 07–cv–265], Defendant EDS's December 20, 2007, motion to dismiss the amended complaint [Clerk's No. 3, 07–cv–563], and Plaintiffs Marisela Gonzalez's and Cindy Tiengkham's January 11, 2008, motion to remand [Clerk's No. 12, 07–cv–563].

Defendant EDS seeks a writ of prohibition to prevent an Iowa state court from taking further action in a wrongful termination lawsuit that Plaintiffs filed against Defendant EDS on May 9, 2007. Defendant EDS removed the lawsuit to federal court on June 15, 2007. [Clerk's No. 2, 07–cv–265]. On July 16, 2007, the Court granted Plaintiffs' motion for voluntary dismissal and dismissed the matter without prejudice. [Clerk's Nos. 8, 9, 07–cv–265]. On November 13, 2007, the state court permitted Plaintiffs to file an amended complaint in the original lawsuit. Plaintiffs' amended complaint named EDS and two additional parties, Tracey Manternach and Allen Finchum, as defendants in the lawsuit. Defendants Manternach and Finchum are supervisory employees that worked at Defendant EDS. Defendant EDS claims that the state court did not have jurisdiction to allow Plaintiffs to file an amended complaint in the original lawsuit and, for that reason, moves this Court to issue a writ of prohibition forbidding the state court to proceed any further in the matter.

On December 13, 2007, Defendant EDS removed the lawsuit to federal court. [Clerk's No. 1, 07–cv–563]. On December 20, 2007, Defendant EDS filed a motion to dismiss. [Clerk's No. 3, 07–cv–563]. On January 11, 2008, Plaintiffs moved to remand this matter to state court. [Clerk's No. 12, 07–cv–563].

### I. FACTUAL AND PROCEDURAL BACKGROUND [1]

In October of 2006, Plaintiffs Gonzalez and Tiengkham were employed by Defendant EDS in Polk County, Iowa. Plaintiffs worked as production assemblers and line leads at Defendant EDS. Defendant EDS used Kelly Services, a temporary employment agency, to hire employees. In the summer of 2006, Defendant EDS and/or Kelly Services received from the federal government "no match" letters regarding several Hispanic employees. Some of the affected employees left their jobs at Defendant EDS in the summer of 2006.

Between the summer of 2006 and October 4, 2006, several employees that had been the subject of "no match" letters returned to work at Defendant EDS using different names. On or before October 4, 2006, Plaintiffs Gonzalez and Tiengkham informed Defendant EDS that workers previously identified as lacking proper doc-

---

1. This section is based on the facts alleged in Plaintiffs' Amended Petition and Jury Demand.

umentation had returned to work. That day, Defendants Manternach and Finchum terminated Plaintiffs' employment with Defendant EDS.

On May 9, 2007, Plaintiffs filed a lawsuit for wrongful termination against Defendant EDS in the Iowa District Court for Polk County. Plaintiffs alleged that, on October 4, 2006, Defendant EDS unlawfully terminated their employment in violation of the public policy of the state of Iowa. The Plaintiffs alleged Defendant EDS violated "the important public policy of the State of Iowa to prevent any person or employer from enabling illegal aliens to remain in the country by harboring or employment of such aliens." (Plaintiffs' Petition and Jury Demand, ¶ 60). On June 15, 2007, pursuant to Defendant EDS's claim of diversity jurisdiction under 28 U.S.C. §§ 1441(a), (b) and § 1446(b), the lawsuit was removed to the United States District Court for the Southern District of Iowa, Central Division. On June 22, 2007, Plaintiffs filed a notice with this Court to voluntarily dismiss the lawsuit against Defendant EDS pursuant to Federal Rule of Civil Procedure 41(a)(1). Defendant EDS did not file a response to Plaintiffs' notice. On July 16, 2007, this Court dismissed the lawsuit without prejudice.

On November 13, 2007, Plaintiffs filed in state court a motion to lift stay and a motion to amend pleadings in their original lawsuit against Defendant EDS. Defendant EDS did not file a response to Plaintiffs' motions. On November 29, 2007, the state court granted Plaintiffs' motions and permitted Plaintiffs to amend the complaint by adding Defendants Manternach and Finchum. On December 3, 2007, Defendant EDS moved this Court to issue a writ of prohibition prohibiting the state court from taking further action because it lacked jurisdiction over the claim. [Clerk's No. 10, 07–cv–265]. Defendant

EDS argued that the state court never regained jurisdiction over the lawsuit because the federal court did not remand the lawsuit after the voluntary dismissal. On December 13, 2007, Defendant EDS filed a Notice of Removal. [Clerk's No. 1, 07–cv–563]. On December 20, 2007, Defendant EDS moved this Court to dismiss the amended complaint. [Clerk's No. 3, 07–cv–563]. On January 11, 2008, Plaintiffs moved this Court to remand the action to state court. [Clerk's No. 12, 07–cv–563].

## II. CONCLUSIONS OF LAW

Plaintiffs contend that this action should be remanded to state court because Defendant EDS failed to establish the complete diversity of the parties as required by 28 U.S.C. § 1332(a)(1) and failed to establish the existence of a federal question as required by 28 U.S.C. § 1331. Defendant EDS contends that this action is within removal jurisdiction because Plaintiffs committed fraudulent joinder in an attempt to defeat diversity jurisdiction. Alternatively, Defendant argues that Plaintiffs' claim should be removed because federal law completely preempts Plaintiffs' state law action. This Court should resolve all facts and ambiguities in the current controlling substantive law in the plaintiff's favor." *Filla v. Norfolk Southern Railway Company*, 336 F.3d 806, 811 (8th Cir.2003) (internal citation omitted).

### A. Diversity Jurisdiction

In order for a federal court to exercise diversity jurisdiction, the amount in controversy must exceed $75,000 and there must be complete diversity of citizenship among litigants. 28 U.S.C. § 1332(a). The parties agree that the amount in controversy exceeds $75,000. "Complete diversity of citizenship exists where no defendant holds citizenship in the same state where any plaintiff holds citizenship."

*OnePoint Solutions, LLC v. Borchert,* 486 F.3d 342, 346 (8th Cir.2007) (internal citation omitted). The litigants' status at the time of filing determines their jurisdiction. *Id.* (internal citation omitted). Both Plaintiffs are residents of Iowa. Defendant EDS is not a resident of Iowa. Defendants Finchum and Manternach are residents of Iowa.

Plaintiffs argue that the litigants lack complete diversity because both Plaintiffs and Defendants Manternach and Finchum are residents of Iowa. Defendant EDS contends that Plaintiffs fraudulently joined Defendants Manternach and Finchum in order to destroy complete diversity of litigants. Thus, Defendant EDS argues, because EDS is the only proper defendant in the lawsuit, the complete diversity requirement is met.

■ "[T]he right of an out-of-state defendant to remove a diversity suit to federal court 'cannot be defeated by a fraudulent joinder of a resident defendant.'" *Simpson v. Thomure,* 484 F.3d 1081,1083 (8th Cir.2007) (internal quotation omitted). The inquiry to determine if joinder of defendants is fraudulent is "whether there is arguably a reasonable basis for predicting that the state law might impose liability based upon the facts involved." *Wilkinson v. Shackelford,* 478 F.3d 957, 963 (8th Cir. 2007) (internal quotation marks omitted). "[I]n its review of a fraudulent-joinder claim, the court has no responsibility to definitively settle the ambiguous question of state law." *Filla,* 336 F.3d at 811. The burden of persuasion on a party claiming fraudulent joinder is a heavy one. *Travis v. Irby,* 326 F.3d 644, 649 (5th Cir.2003). "[I]n situations where the sufficiency of the complaint against the non-diverse party is questionable, 'the better practice is for the federal court not to decide the doubtful question in connection with a motion to remand but simply to remand the case and leave the question for the state

courts to decide.'" *Filla,* 336 F.3d at 811 (internal quotation omitted). This Court must examine Iowa law in order to determine whether an arguably reasonable basis exists to predict that Iowa courts may impose liability on Defendants Manternach and Finchum.

■ Pursuant to Iowa law, an employee that asserts a wrongful discharge claim based on violation of public policy must show the following factors:

(1) The existence of a clearly defined public policy that protects an activity.

(2) This policy would be undermined by a discharge from employment.

(3) The challenged discharge was the result of participating in the protected activity.

(4) There was lack of other justification for the termination.

*Davis v. Horton,* 661 N.W.2d 533, 535–36 (Iowa 2003) (internal citation omitted). Defendant EDS contends that no arguably reasonable basis exists to predict that Iowa courts will impose liability on Defendants Manternach and Finchum because (1) under Iowa law, supervisors cannot be held liable for wrongful termination in violation of public policy, and (2) Plaintiffs failed to identify a "well-recognized, clearly defined" public policy.

### a. Supervisor Liability in Wrongful Termination Claims

Defendant EDS argues that there is no arguably reasonable basis to predict that Iowa courts will impose liability on Defendants Manternach and Finchum because Defendants Manternach and Finchum were the Plaintiffs' supervisors, not their employers. The tort of wrongful termination in violation of public policy, Defendant EDS argues, is premised on the existence of an at-will employment relationship. Because Defendants Manternach and Finchum did not "employ"

Plaintiffs, Defendant EDS argues that they cannot be held individually liable for wrongful termination in violation of public policy.

Plaintiffs contend that Iowa courts have held that an agent of the employer can be held liable for the tort of wrongful termination if the agent is the individual who actually discharged the employee. Plaintiffs argue that Defendants Manternach and Finchum each acted "as an agent of and in the scope of their employment at EDS" when they terminated Plaintiffs' employment. [Plaintiffs' Amended Petition and Jury Demand, ¶¶ 47–48]. Thus, Plaintiffs argue, under the holdings of Iowa courts, Defendants Manternach and Finchum, in addition to Defendant EDS, can be held liable for the tort of wrongful discharge.

■ Iowa courts have addressed, but only in unpublished opinions, the precise question of whether a supervisory employee can be held liable in a lawsuit brought by an employee for wrongful termination in violation of public policy.[2] Alone, the fact that Iowa courts have not addressed this issue in a published opinion is insufficient to meet the standard of an arguably reasonable basis to predict imposition of liability. *See Travis,* 326 F.3d at 648 (holding that there must be a reasonable possibility of recovery, not merely a theoretical one). However, the Iowa Supreme Court has found that a supervisor can be held individually liable for unfair employment practices under the Iowa Civil Rights Act ("ICRA"). *See Vivian v. Madison,* 601 N.W.2d 872 (Iowa 1999). Also, Iowa courts have recognized that an employee can maintain a viable cause of action against a supervisor for tortious interference with contract. *See Grimm v. U.S. West Communications, Inc.,* 644 N.W.2d 8 (Iowa 2002)[3]; *Hunter v. Board of Trustees*

**2.** Two unpublished Iowa Court of Appeals opinions address the question of whether a supervisory employee can be held liable in a lawsuit brought by an employee for wrongful termination in violation of public policy.

In *Jasper v. H. Nizam,* No.05-1994, 2007 WL 1345894 (Iowa Ct.App.May 9, 2007), the appellate court declined to address the issue stating that it was not properly preserved for appellate review. The trial court in *Jasper* found that the defendant supervisory employee, as a corporate officer, could be "held personally liable for torts committed by him, whether or not the torts were committed in the scope of his employment." *Jasper,* 2007 WL 1345894 at *12 n. 5. Because this issue was not properly preserved for appellate review, the Iowa Court of Appeals did not review the district court's finding.

In *Travillion v. Heartland Pork Enterprises, Inc.,* No. 02–1429, 2003 WL 21464807 (Iowa Ct.App. June 25, 2003), the appellate court held that only the employer, not the supervisory employee, could be held liable in a suit for wrongful termination in violation of public policy. In *Travillion,* the plaintiff claimed he was terminated in retaliation for filing a workers' compensation claim against his employer. *Travillion,* 2003 WL 21464807 at *1. The plaintiff claimed his termination violated the public policy contained in I.C.A. § 85.18, which states, "No contract, rule, or device whatsoever shall operate to relieve the employer, in whole or in part, from any liability created by this chapter expert as herein provided." *Id.* at *2. The court found that the supervisory employee could not be held liable because the public policy contained in the statute applied only to employers. *Id.* at *2.

**3.** In *Grimm v. U.S. West Communications, Inc.,* 644 N.W.2d 8 (Iowa 2002), an employee brought a claim for tortious interference with contractual relationship with employer against a supervisor. The supervisor argued that a supervisor cannot be held liable for tortious interference with an employment contract because the supervisor is an agent of the employer, and therefore, a party to the employment contract. *See Harbit v. Voss Petroleum, Inc.,* 553 N.W.2d 329, 331 (Iowa 1996); *Klooster v. N. Iowa State Bank,* 404 N.W.2d 564 (Iowa 1987). However, the employee alleged that the supervisor's actions were outside the scope of the supervisor's agency for the employer. The court held that

*of Broadlawns Medical Center*, 481 N.W.2d 510 (Iowa 1992).[4] This Court finds that the lack of a published Iowa court opinion on the issue, taken together with the Iowa courts' holdings that a supervisor can be individually liable under the ICRA and for tortious interference with an employment contract, demonstrate that an arguably reasonable basis exists to predict that Iowa courts may impose liability on Defendants Manternach and Finchum.

### b. "Well–Recognized, Clearly Defined" Public Policy

Defendant EDS contends that no arguably reasonable basis exists to predict that Iowa courts will impose liability on Defendants Manternach and Finchum because Plaintiffs failed to articulate a "well-recognized, clearly defined" public policy. *Lloyd v. Drake University*, 686 N.W.2d 225, 229 (Iowa 2004) (internal citation omitted). By terminating Plaintiffs' employment, Plaintiffs assert that Defendants Manternach and Finchum violated the state public policy "to prevent any person or employer from enabling illegal aliens to remain in the country by harboring or employment of such aliens in violation of federal law." [Plaintiffs' Amended Petition and Jury Demand, ¶ 68]. Plaintiffs contend that the sources of this public policy are 8 U.S.C. § 1324, 8 U.S.C. § 1324a, and 18 U.S.C. § 4.

Plaintiffs argue that Iowa courts have found that an employee's refusal to break a law violates a "well-recognized" and "clearly defined" public policy. Plaintiffs point to *Fitzgerald v. Salsbury Chemical, Inc.*, 613 N.W.2d 275, 282 (Iowa 2002) (Iowa Supreme Court recognized a state public policy to provide truthful testimony in legal proceedings) and *Jones v. Lake Park Care Center, Inc.*, 569 N.W.2d 369 (Iowa 1997) (Iowa Supreme Court found that termination of an employee for refusal to commit an illegal act is a violation of public policy) to support their contention.[5]

Defendants argue that the *Lloyd* decision demonstrates that Iowa courts will not recognize Plaintiffs' asserted public policy to be "well-recognized" and "clearly defined." In *Lloyd*, the Iowa Supreme Court rejected the plaintiff's contention that the state's public policy of encouraging persons to uphold state criminal laws was "well-recognized" and "clearly defined." Defendant EDS argues that there is no arguably reasonable basis to predict that Iowa courts will impose liability on Defendants Manternach and Finchum because their asserted public policy is very similar to the asserted public policy that the Iowa Supreme Court rejected in *Lloyd.*

the claim for interference with contractual relations against the supervisor could proceed because the supervisor had effectively removed herself as a party to the employment contract by acting outside the scope of the agency.

4. In *Hunter v. Board of Trustees of Broadlawns Medical Center*, 481 N.W.2d 510 (Iowa 1992), an employee brought a claim for tortious interference with contractual relationship with employer against a supervisor. The supervisor in *Hunter* raised a similar argument as did the supervisor in *Grimm*, contending that the supervisor was shielded against individual liability by the privilege of qualified immunity that protects corporate officers and directors. The court in *Hunter* found that the employee could maintain the action against the supervisor because the supervisor acted in contravention of the employer's policies, thereby making qualified immunity inapplicable.

5. Plaintiffs also relied on *Harvey v. Care Initiatives, Inc.*, 634 N.W.2d 681 (Iowa 2001). However, this Court does not believe that *Harvey* is instructive on this issue, as the case concerns the difference between a plaintiff who is an employee or an independent con-

"We have stressed that the tort of wrongful termination must be based on a clear, well-recognized public policy." *Harvey v. Care Initiatives, Inc.*, 634 N.W.2d 681, 685 (Iowa 2001) (internal citations omitted). "[T]he existence of a public policy, as well as the issue whether that policy is undermined by a discharge from employment, presents questions of law for the court to resolve." *Fitzgerald v. Salsbury Chemical, Inc.*, 613 N.W.2d 275, 282 (Iowa 2000) (internal citation omitted). Iowa courts look primarily to state statutes and the Constitution as sources of public policy. *Fitzgerald*, 613 N.W.2d at 283 (internal citation omitted). Federal law can also serve as an appropriate source of state public policy in Iowa. *Smuck*, 540 N.W.2d at 672. "We have also recognized that other states have looked to other sources, such as judicial decisions and administrative rules. Regardless of the source, however, 'we proceed cautiously *and will only extend such recognition to those policies that are well recognized and clearly defined.*'" *Lloyd*, 686 N.W.2d at 229 (emphasis in the original) (internal citation and quotation omitted). "[W]e do not limit the public policy exception to specific statutes which mandate protection for employees. Instead, we look to other statutes which not only define clear public policy but imply a prohibition against termination from employment to avoid undermining that policy." *Fitzgerald*, 613 N.W.2d at 283 (internal citations omitted).

This Court finds that an arguably reasonable basis exists to predict that Iowa courts may find Plaintiffs' asserted public policy to be "well-recognized" and "clearly-defined." The two chief complaints of the Iowa Supreme Court regarding the public policy asserted by the plaintiff in *Lloyd* were (1) it was too generalized to anchor an exception to the at-will employment doctrine, and (2) it lacked a statutory or constitutional basis. *Lloyd*, 686 N.W.2d at 229–31. The plaintiff in *Lloyd* claimed that Iowa had "a public policy against discharge for upholding the criminal laws of the state." *Lloyd*, 686 N.W.2d at 229. The plaintiff failed to cite any statutory or constitutional provision in support of his public policy. *Lloyd*, 686 N.W.2d at 230.

Here, it appears that Plaintiffs have satisfied the minimum requirements laid out by the Iowa Supreme Court in *Lloyd* to establish a "well-recognized, clearly defined" public policy. Plaintiffs' asserted public policy—"to prevent any person or employer from enabling illegal aliens to remain in the country by harboring or employment of such aliens in violation of federal law"—is precise. [Plaintiffs' Amended Petition and Jury Demand, ¶ 68]. Also, Plaintiffs cite specific federal statutes to buttress their asserted public policy. Beyond that, this Court acknowledges that it is particularly important that a state court decide the parameters of the state public policy exception to the at-will employment doctrine.[6] Accordingly, this Court finds that an arguably reasonable basis exists to predict that Iowa courts may find Plaintiffs' asserted public policy

---

tractor in an action for wrongful termination in violation of public policy.

**6.** The Court recognizes that in *Arres v. IMI Cornelius Remcor, Inc.*, 333 F.3d 812 (7th Cir.2003), the Seventh Circuit Court of Appeals stated, "Illinois is not entitled to have a policy on the question of what precautions should be taken to evaluate the credentials of aliens who may, or may not, hold visas autho-

rizing them to work." *Arres*, 333 F.3d at 815. This statement could be construed to mean that states cannot have public policies addressing federal immigration law. However, this Court does not interpret the decision to prohibit Plaintiffs from asserting that federal immigration law is a source of state public policy. Also, the decisions of the Seventh Circuit Court of Appeals are not binding on this Court, and no similar holding has been

to be "well-recognized" and "clearly defined."

For the reasons stated above, this Court concludes that an arguably reasonable basis exists to predict that Iowa courts may impose liability on Defendants Manternach and Finchum. Accordingly, this Court finds that Defendants Manternach and Finchum were not fraudulently joined by Plaintiffs.

### B. Federal Question

Under 28 U.S.C. § 1441, a state law claim can be removed to federal court if a federal question exists. *See* 28 U.S.C. § 1441. "Federal question jurisdiction requires that the action arise 'under the Constitution, laws, or treaties of the United States.'" *Hull v. Fallon*, 188 F.3d 939, 942 (8th Cir.1999) (citing 28 U.S.C. § 1331). The well-pleaded complaint rule governs federal question removal jurisdiction. *Krispin v. May Dept. Stores Co.*, 218 F.3d 919, 922 (8th Cir.2000) (internal citation omitted). Removal of a state law claim is appropriate in "those cases in which a well-pleaded complaint establishes either that federal law creates the cause of action *or* that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law." *Lundeen v. Canadian Pacific Railway Company*, 447 F.3d 606, 611 (8th Cir.2006) (emphasis in original) (internal quotation omitted).

■■■ Complete preemption is a narrow exception to the well-pleaded complaint rule and a basis for federal jurisdiction." *Krispin*, 218 F.3d at 922. "The complete-preemption doctrine provides that a state-law claim becomes a federal question when

Congress intends that a federal statute completely preempt the applicable field of law." *Green v. Ameritrade, Inc.*, 279 F.3d 590, 596 (8th Cir.2002) (internal citation omitted). Under the complete-preemption doctrine, "the preemptive force of certain federal statutes is deemed so 'extraordinary' as to convert complaints purportedly based on the preempted state law into complaints stating federal claims from their inception." *Krispin*, 218 F.3d at 922. "The complete preemption doctrine applies only when a federal statute possesses extraordinary preemptive power, a conclusion courts reach reluctantly." *Magee v. Exxon Corp.*, 135 F.3d 599, 601 (8th Cir.1998) (internal quotations omitted). The test to determine if a federal statute is completely preemptive is whether the federal statute provides "the exclusive cause of action for the claim asserted and also set[s] forth procedures and remedies governing that cause of action." *Beneficial National Bank v. Anderson*, 539 U.S. 1, 8, 123 S.Ct. 2058, 156 L.Ed.2d 1 (2003) (internal citations omitted). "Congressional intent is the touchstone of the complete preemption analysis." *Magee*, 135 F.3d at 601 (internal citation omitted).

Defendant EDS contends that because the federal government has exclusive authority over the regulation of immigration, Plaintiffs are preempted from bringing a state law claim based on Defendant EDS's alleged violation of a federal immigration statute. Defendant EDS argues that the provision in 8 U.S.C. § 1324b of a private cause of action for employees that were retaliated against by employers further demonstrates that Plaintiffs' state law action is preempted by federal immigration law.[7]

established by the Eighth Circuit Court of Appeals.

**7.** Defendant EDS cites 8 U.S.C. 1324b(a)(5), which states, "It is also an unfair immigration-related employment practice for any person or other entity to intimidate, threaten, coerce, or retaliate against any individual for

the purpose of interfering with any right or privilege secured under this section or because the individual intends to file or has filed a charge or complaint, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing, under this section. An individual so intimidated, threatened, coerced, or retaliated against shall be

Plaintiffs argue that there is no evidence of Congress's intent to require claims that are based on the public policy contained within federal immigration law be decided in federal court. Plaintiffs contend that they are not attempting to alter the substance of federal immigration law, but rather, are merely using the federal immigration law as a source of public policy. Thus, Plaintiffs argue that the purpose of the complete preemption doctrine—to deny state courts the ability to completely undermine federal policy choices through their own decisions—would not be served if applied in this case.

■ This Court finds that the complete preemption doctrine does not provide grounds for federal jurisdiction over Plaintiffs' state law claim against Defendants. First, Federal courts have determined that complete preemption applies to a handful of statutes, such as the Employee Retirement Income Security Act. The federal statutes that are considered completely preemptive, such as ERISA, clearly demonstrate Congress's intent for complete preemption. *See Daley v. Marriott Intern., Inc.*, 415 F.3d 889, 894 (8th Cir.2005) ("[E]RISA broadly preempts 'any and all State laws insofar as they may now or hereafter relate to any employee benefit plan' governed by ERISA. 29 U.S.C. § 1144(a)."); *Prudential Ins. Co. of America v. National Park Medical Center, Inc.*, 413 F.3d 897, 907 ("To meet the goals of a comprehensive and pervasive Federal interest and the interests of uniformity with respect to interstate plans, Congress included an express preemption clause in ERISA for the displacement of a State action in the field of private employee benefit programs." (internal quotations omitted)). Here, Defendant EDS failed to provide any evidence that "Congress [has] clearly manifested an intent" to make a state law action for wrongful termination in violation of public policy removable to federal court. *Magee*, 135 F.3d at 602. Because "[c]ongressional intent is the touchstone of the complete preemption analysis" and no evidence of Congressional intent exists, this Court finds that the complete preemption doctrine is not applicable. *Id.* at 601.

Second, this Court finds that Plaintiffs' claim could constitute what the Supreme Court has termed a "parallel claim" in its preemption jurisprudence. The Court has held that parallel claims—which include state claims for damages that do "not impose a requirement that is 'different from, or in addition to,' requirements under federal law"—are not preempted by federal statutes. *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 513, 116 S.Ct. 2240, 135 L.Ed.2d 700 (1996) (O'Connor, J., concurring in part and dissenting in part).[8] *See, e.g. Riegel v. Medtronic, Inc.*, —— U.S. ——, 128 S.Ct. 999, 1011, 169 L.Ed.2d 892 (2008) (finding that the Medical Device Amendments of 1976 ("MDA") "does not prevent a State from providing a damages remedy for claims premised on a violation of FDA regulations; the state duties in that case

---

considered, for purposes of subsections (d) and (g) of this section, to have been discriminated against."

**8.** Justice O'Connor states that a plaintiff's claims were not preempted by the federal statute "to the extent that [the plaintiff] seek[s] damages for [the defendant's] alleged violations of federal requirements. Where a state cause of action seeks to enforce [a] [federal statute] that claim does not impose a

requirement that is 'different from, or in addition to,' requirements under federal law. To be sure, the threat of a damages remedy will give manufacturers an additional cause to comply, but the requirements imposed on them under state and federal law do not differ. [The federal statute] does not preclude States from imposing different or additional *remedies*, but only different or additional *requirements*." *Medtronic, Inc.*, 518 U.S. at 513, 116 S.Ct. 2240 (emphasis in original).

'parallel,' rather than add to, federal requirements") (internal citations omitted). Here, Plaintiffs' claims against Defendants do not impose requirements that are different from, or in addition to, those imposed by the applicable federal immigration statutes. Because Plaintiffs' action for wrongful termination in violation of public policy could be considered a parallel claim, it is not completely preempted by federal immigration statutes.

Third, 8 U.S.C. § 1324b does not, as Defendant EDS alleges, "provide the exclusive cause of action for the claim asserted" and does not "set forth procedures and remedies governing that cause of action." *Beneficial National Bank*, 539 U.S. at 8, 123 S.Ct. 2058 (internal citations omitted). In *Arres v. IMI Cornelius Remcor, Inc.*, 333 F.3d 812 (7th Cir.2003), the Seventh Circuit Court of Appeals explained the limited nature of the cause of action contained in 8 U.S.C. § 1324b. The Court stated that the cause of action "[d]oes not cover all activities that implicate any provision of the immigration laws; it is limited to complaints and charges regarding discrimination based on national origin and citizenship, the subject of § 1324b." *Arres*, 333 F.3d at 814. Like the plaintiff in *Arres*, Plaintiffs' lawsuit does not concern claims of discrimination based on national origin and citizenship. "Only those claims that fall within the preemptive scope of the particular statute, or treaty, are considered to make out federal questions[.]" *Gaming Corp. of America v. Dorsey & Whitney*, 88 F.3d 536, 543 (8th Cir.1996) (internal citation omitted). Thus, because Plaintiffs' state action does not come within "the preemptive scope" of 8 U.S.C. § 1324b, the statute does not completely preempt Plaintiffs' state action.

Upon the foregoing,

**IT IS ORDERED**

That the Court denies Defendant EDS's motion for a writ of prohibition [Clerk's No. 10, 07–cv–265] and grants Plaintiffs' motion for remand [Clerk's No. 12, 07–cv–563]. Because a remand to state court divests the Court of jurisdiction over the action, Defendant EDS's motion to dismiss [Clerk's No. 3, 07–cv–563] is moot.