United States Court of Appeals

For the Eighth Circuit

_____

No. 18-3393

_____

United States of America

*Plaintiff - Appellee*

v.

Gregory Thomas

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Western District of Missouri - Springfield

_____

Submitted: November 13, 2019
Filed: February 14, 2020

_____

Before SHEPHERD, GRASZ, and KOBES, Circuit Judges.

_____

GRASZ, Circuit Judge.

Gregory Thomas was charged with a series of federal crimes, but the district court suspected he was not competent to stand trial. After a fruitless competency-restoration attempt, the district court[1] committed him to the custody of the Attorney

---

[1]The Honorable M. Douglas Harpool, United States District Judge for the Western District of Missouri.

General under 18 U.S.C. § 4246. Thomas appeals the order of commitment. We affirm.

## I. Background

A multiple-count indictment charged Thomas with a host of federal crimes related to a ten-year conspiracy involving kidnapping, forced labor, hate crimes, and other racketeering-related violent crimes. Thomas attempted to plead guilty, but the district court[2] rejected the plea, doubting that Thomas was competent to proceed. The court instead ordered competency restoration under 18 U.S.C. § 4241(b). Thomas was to be held and evaluated at the United States Medical Center for Federal Prisoners ("Medical Center") in Springfield, Missouri.

Clinical Psychologist Jacob Chavez, Psy.D., examined Thomas at the Medical Center. According to Dr. Chavez, Thomas was not competent and was unlikely to become competent in the foreseeable future. The district court then scheduled an examination and a hearing to determine whether Thomas should be committed to the Attorney General's custody. Federal law requires Thomas's commitment if, due to his mental deficiencies, his release would create a substantial risk of bodily injury or serious property damage. 18 U.S.C. § 4246(d).

A Medical Center risk assessment panel (the "Panel") conducted the § 4246 examination. The Panel diagnosed Thomas with an unspecified neurocognitive disorder, borderline intellectual functioning, and adult antisocial behavior. According

---

[2]The Honorable Cynthia M. Rufe, United States District Judge for the Eastern District of Pennsylvania. Thomas was indicted in the Eastern District of Pennsylvania. Because he was held at the Medical Center in Springfield, Missouri, the government initiated civil commitment proceedings in the Western District of Missouri. Excepting this paragraph, all references in this opinion to "the district court" refer to the United States District Court for the Western District of Missouri.

to the Panel, Thomas had "engaged in aggressive and unlawful behaviors that violate social norms," "endorsed violent behavior across developmental time periods beginning at age nine," and "show[ed] a pattern of violating the rights of others." The Panel found violence in his personal history: he likely committed violence related to the charged conspiracy, and he had previously been convicted of sexual assault. The Panel implied that his professional boxing career also suggested violent tendencies.

Because of his mental deficiencies, the Panel explained, Thomas was easily manipulated by his domestic partner (the conspiracy's ringleader) and was readily complicit in her violent, abusive schemes. Thomas was probably unable to understand his partner's influence over him and the negative effects of his conduct. And Thomas's denials of past violence indicated a lack of empathy toward others. The Panel concluded that, because of his mental deficiencies, releasing Thomas would create a substantial risk of bodily injury or serious property damage. It recommended commitment under § 4246.

Thomas requested an independent examination to rebut the Panel's conclusions. The district court granted his request and Clinical Psychologist Richart DeMier, Ph.D., examined Thomas at the Medical Center. Dr. DeMier largely agreed with the Panel, concluding that Thomas met the "diagnostic criteria for unspecified neurocognitive disorder, borderline intellectual functioning, and adult antisocial behavior."

But Dr. DeMier disagreed with the Panel's risk assessment. First, he noted that Thomas's dangerousness primarily stems from his manipulability, not his mental defects. Thomas's mental deficiencies, by themselves, do not make him dangerous; his dangerousness primarily depends on those around him. Second, Dr. DeMier expressed skepticism about the Panel's assessment of Thomas's history of violence. According to Dr. DeMier, the present offense conduct, a decades-old sexual assault

conviction, and a professional boxing career do not amount to a significant history of violence.[3] And third, Dr. DeMier explained that Thomas's denials of past violence do not indicate lack of empathy, they simply illustrate Thomas's understandable aversion to punishment. In short, Dr. DeMier concluded that — despite Thomas's mental defects — his release would not be dangerous enough to warrant commitment.

The district court considered the opinions of Dr. Chavez, the Panel, and Dr. DeMier. It gave more weight to the government experts' opinions because Dr. Chavez and the Panel "spent significantly more time evaluating [Thomas] and have had more contact with [him] than Dr. DeMier." More importantly, however, the district court found Dr. DeMier's opinion inconsistent. After all, Dr. DeMier admitted that Thomas's mental defects made it easy to manipulate him into violence. And Dr. DeMier recognized that Thomas's release would permit his association with manipulative, violent people. The district court therefore rejected Dr. DeMier's conclusion that Thomas's mental deficiencies do not substantially increase his dangerousness. It instead found that, given his mental defects, Thomas's release would create a substantial risk of bodily injury or serious property damage. Thomas was committed to the Attorney General's custody under § 4246.

## II. Discussion

"Section 4246 provides for the indefinite hospitalization of a person due for release but who, as the result of a mental illness, poses a significant danger to the general public." *United States v. S.A.*, 129 F.3d 995, 998 (8th Cir. 1997). To warrant commitment under § 4246, the government must prove, by clear and convincing evidence, (1) "a mental disease or defect," (2) "dangerousness if released," (3) "a

---

[3]Like Dr. DeMier, we disapprove of the Panel's implication that participating in contact sports suggests violent tendencies. But there is no indication that Thomas's boxing career played a role in the district court's decision to commit Thomas.

direct causal nexus between the mental disease or defect and dangerousness," and (4) "the absence of suitable state placement." *United States v. Williams*, 299 F.3d 673, 676 (8th Cir. 2002) (quoting *S.A.*, 129 F.3d at 1000).

"We review the factual determinations underlying the district court's § 4246 decision for clear error. Review under the 'clearly erroneous' standard is significantly deferential, requiring a 'definite and firm conviction that a mistake has been committed.'" *Id.* (internal citations and brackets omitted) (quoting *Concrete Pipe & Prods. of Cal., Inc. v. Constr. Laborers Pension Tr.*, 508 U.S. 602, 623 (1993)). "We are not at liberty to substitute our view of the evidence for that of the district court merely because we would have reached a different conclusion." *Id.*

Thomas claims the government failed to prove he is dangerous — or at least, that there is a "direct causal nexus" between his dangerousness and his mental defect. He raises two arguments on appeal. First, the court improperly gave more weight to the government experts simply because they spent more time with Thomas. Second, the district court misinterpreted Dr. DeMier's report and therefore wrongly rejected evidence rebutting the government experts. These mistakes, Thomas maintains, led to his erroneous commitment.

We turn first to Thomas's argument that the district court improperly gave more weight to the government experts. It is true that, if district courts can give government experts more weight simply because they have more time with the defendant, then the defendant will be disadvantaged. But the government's home-field advantage, by itself, is not grounds for clear-error reversal. Rather, a factfinder has the authority to "give properly admitted expert testimony such weight as he or she thinks the circumstances dictate that it deserves." *Skar v. City of Lincoln*, 599 F.2d 253, 259 (8th Cir. 1979) (finding no clear error when a district court gave "little weight" to an expert's testimony). Even Dr. DeMier suggested that the government experts — due to their greater exposure — knew more about Thomas than he did.

Moreover, the district court explained that the primary reason for ordering commitment was the weakness of Dr. DeMier's opinion, not the government's lengthy exposure to Thomas.

This brings us to Thomas's second argument: that the district court misinterpreted Dr. DeMier's opinion. According to Thomas, the district court took Dr. DeMier's findings out of context. Dr. DeMier's supposed inconsistency was limited to a discrete discussion of Thomas's executive functioning as it relates to dangerousness. By inordinately focusing on one paragraph in a nine-page expert report, Thomas maintains, the district court ignored other findings rebutting the government's theories.

Thomas's argument fails; there is no indication the district court ignored any part of Dr. DeMier's opinion. Our review of the record simply suggests that the district court found the government experts more persuasive. Moreover, Dr. DeMier's inconsistency was not limited to a single paragraph; in other paragraphs not discussing Thomas's executive functioning he acknowledged that Thomas's manipulability can result in violence, and is likely caused by his "intellectual deficits."

The district court and Dr. DeMier agreed that Thomas's susceptibility to manipulation — and therefore violence — stemmed from his mental defects. But Dr. DeMier denied that this established the requisite causal nexus between Thomas's mental defect and his dangerousness. *Williams*, 299 F.3d at 676; *see also S.A.*, 129 F.3d at 1001 (finding a causal nexus when dangerousness is "directly connected" with mental illness and the illness is a "significant factor" contributing to violent behavior). The district court was unpersuaded by Dr. DeMier, and after careful review of the record, we are not left with a "definite and firm conviction that a mistake has been committed." *Williams*, 299 F.3d at 676 (quoting *Concrete Pipe*, 508 U.S. at 623). The district court was charged with assessing Thomas's dangerousness,

and as such it "may reject experts' conclusions when their reasoning supports different results." *United States v. Bilyk*, 949 F.2d 259, 261 (8th Cir. 1991); *accord. Williams*, 229 F.3d at 678. That Dr. DeMier's less-than-robust opinion is at odds with the district court's conclusion does not warrant clear-error reversal. *See Williams*, 299 F.3d at 677–78.

## III. Conclusion

We find no clear error in the district court's § 4246 findings. We therefore affirm the district court's order committing Thomas to the Attorney General's custody for hospitalization and treatment. In doing so, we remind the government that its role is "not that of punitive custodian of a fully competent inmate, but a benign custodian of one legally committed to it for medical care and treatment — specifically for psychiatric treatment." *Williams*, 299 F.3d at 678 (quoting *United States v. Steil*, 916 F.2d 485, 488 (8th Cir. 1990)).

_____