# United States Court of Appeals
### For the Eighth Circuit

_____

No. 22-2403

_____

United States of America

*Petitioner - Appellee*

v.

Erik Becerra

*Respondent - Appellant*

_____

Appeal from United States District Court
for the District of Minnesota

_____

Submitted: May 11, 2023
Filed: July 18, 2023

_____

Before SMITH, Chief Judge, COLLOTON and BENTON, Circuit Judges.

_____

SMITH, Chief Judge.

Erik Becerra suffers from multiple mental disorders, including schizophrenia. In 2018, he was sentenced to 80 months' imprisonment for being a felon in possession of a firearm and ammunition. He was due to be released on January 8, 2021. Prior to his release, the government filed a petition pursuant to 18 U.S.C. § 4246, requesting that Becerra be committed to the custody of the Attorney General

because, the government asserted, Becerra suffers from mental disorders that pose a significant danger to the public if he were released. The district court[1] granted the government's § 4246 petition, of which Becerra appeals. We affirm.

## I. *Background*

Becerra suffers from borderline personality disorder, substance abuse disorder, and schizophrenia. His onset date is believed to be sometime in 2013. He suffers from delusions that "tend to be grandiose and focus on persecutory themes, including that federal officers raped and killed his daughter, that he is a powerful political person, and that he has been licensed by various domestic and international governmental authorities to search for treasonous people and to execute them." R. Doc. 39, at 5 (citations omitted).

In 2017, a jury convicted Becerra of being a felon in possession of a firearm and ammunition. He was sentenced to 80 months' imprisonment and was due to be released on January 8, 2021. While Becerra was incarcerated, he assaulted and threatened prison staff and fellow prisoners. Upon evaluation, Becerra was deemed incompetent and therefore not responsible for his actions because of his mental disorders. In December 2020, Becerra was examined by a Risk Assessment Review Panel ("Review Panel") at the Federal Medical Center in Rochester, Minnesota ("FMC Rochester"). The Review Panel determined that "his release to the community in his current state of functioning would create a substantial risk of bodily injury to another person or serious damage to property of others." R. Doc. 4, at 21.

The government filed a petition for civil commitment under 18 U.S.C. § 4246(a). "Section 4246 provides for the indefinite hospitalization of a federal prisoner who is due for release but who, as the result of a mental illness, poses a

---

[1]The Honorable Paul A. Magnuson, United States District Judge for the District of Minnesota.

significant danger to the general public." *United States v. Williams*, 299 F.3d 673, 676 (8th Cir. 2002) (cleaned up). In addition, the government's filing included the Review Panel's report ("Risk Assessment Report"); certification from the warden of FMC Rochester that Becerra has a mental disease or defect that would create a substantial risk of bodily injury to another person or serious damage to property of another if he is released from custody and that suitable arrangements for state custody and care of Becerra are not currently available; and a letter from FMC Rochester to the Minnesota Department of Human Services attempting to secure state placement. The case was referred to a magistrate judge pursuant to 28 U.S.C. § 636 and District of Minnesota Local Rule 72.1.

A. *Proceedings Before the Magistrate Judge*

Although provided counsel, Becerra filed a motion to proceed pro se. The magistrate judge addressed the merits of Becerra's motion in two hearings. In his analysis, the magistrate judge noted that Becerra must "show that [he] 'understand[s] the nature and consequences of the proceedings against' [him] and can 'assist properly in [his] defense.'" R. Doc. 22, at 5 (quoting 18 U.S.C. § 4241). The magistrate judge found the evidence "mixed as to whether Mr. Becerra understands the nature and consequences of the proceeding against him." *Id*. He noted that at the first hearing, Becerra "seemed to believe the proceedings were an opportunity to relitigate the underlying criminal case," but at the second hearing Becerra "knew that he was in a § 4246 proceeding, and that the proceeding could lead to him continuing to be deprived of his liberty." *Id*. at 5–6.

Ultimately, the magistrate judge found that Becerra was "manifestly not able to do the basic tasks needed to present his defense unassisted by counsel," which the magistrate judge found dispositive. *Id*. at 6. Becerra exhibited signs of severe delusions at both hearings. These delusions caused Becerra to believe he was a Navy SEAL; that his underlying criminal conviction for being a felon in possession of a firearm was based on his lawful possession of a service weapon that he received from

the Navy SEALs; that he was a Minnesota, California, and military judge; that he was Secretary of Defense; that he is "presidential number 4919940105—which means that his acts are protected by the Presidential Statement Act"; that he executed Osama Bin Laden, who confessed to involvement in the 9/11 attacks to Becerra before being executed; that he "invented jet turbine engines, ammunition, the antipsychotic medication Seroquel, and the pain relief medicine Gabapentin"; and that he "is not mentally ill, has no psychotic behaviors, has never been prescribed any antipsychotic medications, and takes Seroquel solely to help him sleep." *Id*. at 6–7. The magistrate judge denied Becerra's motion based on the evidence. Becerra did not file an objection to the magistrate judge's order.

The magistrate judge followed up Becerra's counsel-waiver hearing with an evidentiary hearing addressing the merits of the government's petition. Before the government called its first witness, Becerra's lawyer raised the issue of Becerra's self-representation. His lawyer noted that Becerra objected to being represented by counsel. The magistrate judge acknowledged Becerra's objection and stated, "[Y]our objection is noted, so if you want to take this to a higher court and say that it was wrong to go ahead over your objection, everything procedurally that needs to be done to let you do that has now been done." R. Doc. 29, at 5:17–21.

The government then called its only witness: Dr. Melissa Klein, Chief Psychologist at FMC Rochester and one of the medical professionals involved in preparing the Risk Assessment Report. Dr. Klein testified that "in her professional opinion, releasing Mr. Becerra would create a substantial risk of bodily injury to another person." R. Doc. 39, at 7; *see also* R. Doc. 29, at 12:25–13:4. She explained that this conclusion was derived from "clinical interviews, behavioral observations, [and a] structured professional judgment tool called an HCR-20." R. Doc. 29, at 7:19–21.

-4-

Becerra testified. Rather than address the government's petition, his testimony attacked his underlying conviction and the validity of the § 4246 proceedings. His testimony also swerved into delusional memories caused by his mental illness, including that he

> "went into the mountain to get Bin Laden . . . [and] cut his head off for what happened in New York[,]" and "found Saddam Hussein hiding in Iraq, and [he] also cut his head off." He further testified that he "started the CIA[;]" that "[u]nder the 17-hour act" his violent actions have been approved by the United States Congress; and that he has a "007 license . . . that England gave [him]" that allows him to "kidnap people [and] to hold people . . . for up to five days."

R. Doc. 39, at 7–8 (alterations in original) (citations omitted) (quoting R. Doc. 29, at 63:8–64:22).

After the hearing, the magistrate judge issued a report and recommendation (R&R) advising the district court to grant the government's petition. The R&R first found that Becerra suffered from schizophrenia, antisocial personality disorder, and substance use disorder. The R&R credited the uncontested testimony of Dr. Klein and the Risk Assessment Report provided by the government.

The magistrate judge determined that the government proved by clear and convincing evidence that Becerra's release would create a substantial risk of bodily injury to another person. He found that the evidence highlighted (1) Becerra's history of dangerousness, including recent incidents while he was incarcerated; (2) his history of substance abuse; (3) his identification of potential targets for violence, including his ex-girlfriend, strangers who he says need to be executed because they are treasonous, and a corrections officer that he believed had raped and murdered his daughter; (4) his history of illegal weapons use between periods of incarceration, including a 2003 conviction for carrying a loaded firearm and a 2005 conviction for

first-degree aggravated robbery after kidnaping a person and threatening to shoot them if they ran away; (5) his poor compliance with prescribed medication regimens; (6) his delusional thinking; and (7) his lack of a support system.

The magistrate judge also discounted Becerra's claim that his condition has recently improved. He noted that recent improvements "do not negate a finding of dangerousness considering his entire history." *Id*. at 19. He relied on Dr. Klein's testimony "that, in her opinion, the structured inpatient setting at FMC-Rochester helped Mr. Becerra to act less aggressively towards others because 'he hasn't had access to others to hurt them.'" *Id.* (quoting R. Doc. 29, at 53:11–17.).

The magistrate judge also found that a sufficient nexus existed between Becerra's mental disorders and his dangerousness. He relied on the Risk Assessment Report, which observed that when Becerra's mental illness deteriorated, his delusional beliefs exacerbated his aggressive and violent actions leading him to assault peers and correctional staff. The magistrate judge observed that the Risk Assessment Report noted that Becerra justified his violent actions, with delusions, which were attributable to his mental illness. The magistrate judge further found that the Risk Assessment Report attributed Becerra's violent behavior to his mental illness.

Based on the Bureau of Prisons's (BOP) certification, the magistrate judge concluded that there were no suitable arrangements for state custody. He relied on this court's decision in *United States v. Wigren*, 641 F.3d. 944 (8th Cir. 2011), in reaching that conclusion.

The magistrate judge recommended granting the government's motion and committing Becerra to the custody of the Attorney General.

B. *Proceedings Before the District Judge*

Becerra filed five objections to the R&R. First, he challenged the finding that he has an ongoing history of violent behavior. He specifically challenged the R&R's reliance on his 2003 and 2005 convictions because they occurred before 2013, the onset date of his mental illness.

Second, he challenged the R&R's reliance on the assaults he committed while incarcerated. He argued that those assaults were "all minor fights with other inmates, none of them [were] serious, and it appears that on several of these occasions, Mr. Becerra was simply defending himself against the provocations of others." R. Doc. 42, at 8. He further noted that such behavior was not out of the norm for prison populations.

Third, he argued that the R&R ignored the non-violent nature of his underlying conviction.

Fourth, he argued that his delusions deserve to be placed in better context and that, while fanciful, they had never been acted upon.

Fifth, he argued that the R&R did not adequately address the fact that if released, he would be subject to three years of supervised release. He asserted that "the government maintains adequate ability to supervise Mr. Becerra as it does all other persons being released following completion of a prison sentence, and that, in itself, significantly diminishes the theoretical concerns of violent behavior due to his delusional disorder." *Id.* at 9.

He also contended the *Wigren* case was wrongly decided and reiterated his "continuing objection to lack of self-representation in this matter." *Id.* at 11.

The district court adopted the R&R. It rejected Becerra's first and second objections, noting that he has exhibited violent behavior before and during his most recent incarceration. The court concluded that Becerra failed to show that the R&R erroneously determined that he is dangerous due to a mental condition.

The court found Becerra's third objection baseless, noting that he drove around an airport with an illegal firearm in his car and carried it into a store. The court's observation was in stark contrast to Becerra's characterization that "'he inadvertently discovered [a gun] under the seat of a car he was borrowing,' and that it 'was not used or intended to be used.'" R. Doc. 43, at 3 (alteration in original) (quoting R. Doc. 42, at 8).

The court found Becerra's fourth objection without merit. It noted that he had conceded that there were times in which he acted based upon his delusions.

As to Becerra's fifth objection, the court agreed with the magistrate judge that "the question is not whether the Court may simply return Mr. Becerra to prison later . . . ; the question is whether, given the risks documented in the record before it . . . the [c]ourt may permit his release in the first place." *Id.* at 3–4 (first and second alterations in original) (quoting R. Doc. 39, at 14).

Finally, the district court rejected Becerra's challenge to *Wigren*. Becerra provided no authority or convincing argument supporting his position, and the court was bound by the Eighth Circuit decision. The district court did not address the denial of Becerra's motion to proceed pro se.

## II. *Discussion*

Becerra raises three challenges on appeal: (1) the denial of his motion to proceed pro se; (2) the grant of the government's petition; and (3) whether § 4246 requires substantive proof that suitable arrangements for state custody and care are

unavailable rather than mere facial compliance, which was accepted below. None of his challenges have merit.

### A. *Motion for Self-Representation*

We lack jurisdiction over Becerra's challenge to the denial of his motion to proceed pro se. Under Federal Rule of Civil Procedure 72,

> [w]hen a pretrial matter not dispositive of a party's claim or defense is referred to a magistrate judge to hear and decide, the magistrate judge must promptly conduct the required proceedings and, when appropriate, issue a written order stating the decision. A party may serve and file objections to the order within 14 days after being served with a copy. *A party may not assign as error a defect in the order not timely objected to.* The district judge in the case must consider timely objections and modify or set aside any part of the order that is clearly erroneous or is contrary to law.

Fed. R. Civ. P. 72(a) (emphasis added). "[W]hen . . . a litigant could have tested a magistrate's ruling by bringing it before the district judge, but failed to do so within the allotted . . . period in [Rule 72(a)], he cannot later leapfrog the trial court and appeal the ruling directly to the court of appeals." *Daley v. Marriott Int'l, Inc.*, 415 F.3d 889, 893 n.9 (8th Cir. 2005) (second and fourth alterations in original) (quoting *Pagano v. Frank*, 983 F.2d 343, 346 (1st Cir. 1993)).

Under 28 U.S.C. § 1291, we "have jurisdiction of appeals from all final decisions of the district courts of the United States." "Except where the parties have consented to entry of judgment by a magistrate judge in a civil case, *see* 28 U.S.C. § 636(c)(3), an order of a magistrate judge is not a final decision of a district court that may be appealed to this court." *United States v. Bevans*, 506 F.3d 1133, 1135 (8th Cir. 2007) (per curiam). Where there is "no decision by a federal District Court . . . nor jurisdiction pursuant to any other statute, we are without jurisdiction to hear

th[e] appeal." *United States v. Haley*, 541 F.2d 678, 678 (8th Cir. 1974) (granting motion to dismiss appeal where defendant appealed directly from an order of the magistrate judge, without seeking review from the district judge).

Here, the parties did not consent to entry of judgment by a magistrate judge under § 636(c)(3); the case was referred to a magistrate judge by the district court. The assigned magistrate judge denied Becerra's motion for self-representation on October 15, 2021. Becerra first objected to this order orally during a December 1, 2021 evidentiary hearing before the same magistrate judge. Becerra did not file a written objection to the magistrate judge's order to the district court until April 28, 2022, when he was responding to the magistrate judge's R&R addressing the merits of the government's petition. As a result, the district court was not required to address Becerra's objection to the denial of his motion, and it declined to do so.

Becerra argues that his self-representation issue was preserved because it was presented to the district court. He relies on *Solomon v. Petray*, 795 F.3d 777, 785 n.4 (8th Cir. 2015). His reliance is misplaced. *Solomon* dealt with an interlocutory appeal from a district court's denial of qualified immunity. Becerra is challenging an order from a magistrate judge, not from the district court. It is undisputed that he failed to seek review of the magistrate judge's order denying his motion by the district court within the required 14-day window. Therefore, there is no "final decision of a district court" for us to review with respect to Becerra's motion for self-representation. *Bevans*, 506 F.3d at 1135. As a result, we lack jurisdiction to review the magistrate judge's denial of Becerra's motion.

## B. *The Government's Petition*

Becerra challenges the district court's reliance on (1) his criminal history; (2) his history of weapons possession; (3) his violent acts since incarceration; and (4) his substance abuse history, noncompliance with medication regimen, and lack of viable release plan. Becerra ultimately asserts that the evidence failed to establish that he

poses a substantial risk of bodily injury to others if released. "We review the factual determinations underlying the district court's § 4246 decision for clear error. Review under the clearly erroneous standard is significantly deferential, requiring a definite and firm conviction that a mistake has been committed." *Williams*, 299 F.3d at 676 (cleaned up).

First, Becerra challenges reliance on his "[c]riminal history—including state robbery offenses—dating from the early 2000s, long before the presumed onset of mental health disorders in 2013." Appellant's Br. at 25. He argues that his pre-2013 criminal history "lacks any discernable nexus between disorder and dangerousness." *Id*. at 26 (citing *Williams*, 299 F.3d at 676).

Becerra's argument misses the point of the nexus requirement. The nexus that must be established is between Becerra's mental condition and his dangerousness. The record evidence tied his violent actions to his mental health disorders. The magistrate judge specifically noted, "The Risk Assessment [Report] observed that when Mr. Becerra's mental illness deteriorates, his aggression and violent actions increase, fueled by delusional beliefs that lead him to assault peers and correctional staff." R. Doc. 39, at 20. The magistrate judge specifically highlighted Dr. Klein's statement that, "there is a clear linkage between several of his incidents of aggression and his mental illness." *Id*. Indeed, the BOP documented multiple instances in which he assaulted or threatened other inmates and a prison official. And in the most recent instances, rather than receive punishment, Becerra was found "Not Competent, Not Responsible." Appellant's App. at 24. We discern no error.

Second, Becerra challenges the use of his history of unlawfully possessing weapons. He focuses on his underlying conviction, which he describes as "decidedly non-violent, and instead involved Mr. Becerra's 'cooperative' actions with respect to probation and law-enforcement officials." Appellant's Br. at 26.

Becerra again misses the point of the gun possession evidence. The offense was indeed nonviolent, but the reason he carried the firearm was because "[h]e believed that the drug cartel was after him in some way and that he was in danger." Appellant's App. at 78. So not only did he unlawfully carry a firearm, he did so because of delusions caused by his mental illness.

Further, as recently as 2020, Becerra declared that he would execute CIA and DEA agents when he gets released; that he would "execute anyone [he] deem[ed] fit," *id.* at 22; that the assaults he committed against other inmates and a prison official "were accepted 'by the law,'" *id.* at 25; and that "[t]here is no other way but to kill," *id.* Becerra's history of illegally possessing guns and his current belief that he is both authorized and obligated to hurt and kill others provide sufficient evidence to establish his dangerousness.

Third, Becerra argues that the district court ignored the fact that the violent actions he displayed while incarcerated occurred before he was on his current medication regimen. He argues that he has since had "major improvements and relative placidity." Appellant's Br. at 26. The R&R expressly considered Becerra's recent improvements. The magistrate judge, however, found that it did not negate the overall finding of dangerousness. Thus, Becerra's third argument is without merit.

Fourth, Becerra challenges reliance on his "[s]ubstance use history, dating mostly before and partially after presumed 2013 onset of mental-health disorders" and his "[d]isregard and noncompliance with recommended medication regimen and perceived lack of viable release plan." *Id.* Becerra argues that reliance on these findings "disregard[ed] the authority of the sentencing court and probation officials to monitor [him], prevent him from engaging in harmful behaviors, and compel him to participate in appropriate treatment." *Id.* at 27. The district court adopted the magistrate judge's response to this claim: "the question is not whether the [c]ourt may simply return Mr. Becerra to prison later . . . ; the question is whether, given the risks

documented in the record before it . . . the [c]ourt may permit his release in the first place." R. Doc. 43, at 3–4 (second and third alterations in original) (quoting R. Doc. 39, at 14.)

The district court is correct. The government must present evidence showing: "(1) the person suffers from a mental disease or defect; (2) the person will be dangerous if released; and (3) a direct causal nexus exists between the mental disease or defect and dangerousness. The government must also prove that no suitable state placement exists." *United States v. Malmstrom*, No. 21-2839, 2022 WL 3371271, at *1 (8th Cir. Aug. 16, 2022) (unpublished per curiam) (citing *United States v. Thomas*, 949 F.3d 1120, 1123 (8th Cir. 2020)). After assessing the evidence presented, to grant the government's petition, the district court must "find[] by clear and convincing evidence that the person is presently suffering from a mental disease or defect as a result of which his release would create a substantial risk of bodily injury to another person or serious damage to property of another." 18 U.S.C. § 4246(d). Becerra has failed to provide any convincing legal authority suggesting that the district court must also consider the sentencing court and probation's ability to monitor and control him. This claim is, therefore, rejected.

Becerra's main assertion, that "the evidence presented at the § 4246 hearing failed to demonstrate . . . that [he] is 'presently' suffering from a mental disease which now poses a substantial risk of bodily injury to others," is belied by his own testimony. Appellant's Br. at 27. For example, at the § 4246 hearing, he testified that he started the CIA and that he has "to get violent with some of these people, dangerous people in the community," in order to protect the community. Appellant's App. at 127–28. He also testified that he received a "007 license" from England, which permits him "to kidnap people, to hold people, you know, for up to five days." *Id*. at 128. This, in combination with the evidence that he actually acted upon his delusions when he attacked other inmates and a prison official, shows that he is

-13-

suffering from a mental disease which now poses a substantial risk of bodily injury to others. The district court's findings to that effect were not clearly erroneous.

## C. *State Alternatives*

Becerra challenges the certification requirement under § 4246(a), which requires the government to certify "that suitable arrangements for State custody and care of the person [to be committed] are not available." Becerra acknowledges that we have held that this only requires "'facial sufficiency,' [that] need not be proved under the clear-and-convincing standard, and is not subject to judicial review at all." Appellant's Br. at 29 (quoting *Wigren*, 641 F.3d at 946–47). He further acknowledges that the government met this requirement by offering a letter from the BOP to Minnesota state officials which inquired about the matter.

However, Becerra maintains that *Wigren* was wrongly decided and that it "effectively undercut and all but eliminated the unambiguous statutory requirement that the government demonstrate that 'suitable arrangements for State custody and care of the person are not available.'" *Id.* at 29–30 (quoting 18 U.S.C. § 4246(a)). He argues that § 4246 requires a meaningful showing under the clear-and-convincing standard of proof.

*Wigren* forecloses Becerra's argument. 641 F.3d at 946–47 (holding that § 4246 only requires "facial sufficiency," and "does not provide for judicial review of the certification, or establish standards by which a court could determine whether 'suitable arrangements for State custody' are available."). In *Wigren*, we held that a Warden's certification "that suitable arrangements for state custody and care over [the federal detainee] are not currently available" was sufficient, even though the BOP had not yet asked the state if such arrangements were available. *Id.* at 946.

"It is a cardinal rule in our circuit that one panel is bound by the decision of a prior panel." *Mader v. United States*, 654 F.3d 794, 800 (8th Cir. 2011) (en banc) (internal quotation marks omitted). We are, therefore, bound by *Wigren*.

## III. *Conclusion*

We affirm the order of the district court.

_____